1

2

3

4

5                                    IN THE UNITED STATES DISTRICT COURT

6                                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8     STEVE SANDERS, individually and as class            No. C 04-02281 SI
      representative,
9                                                         **ORDER GRANTING DEFENDANTS'**
                                                          **MOTIONS TO DISMISS**
               Plaintiff,
10
         v.
11
      BILL LOCKYER, in his official capacity as
12    Attorney General of the State of California; PHILIP
      MORRIS USA, INC.; R.J. REYNOLDS
13    TOBACCO COMPANY; BROWN &
      WILLIAMSON TOBACCO CORPORATION;
14    and LORILLARD TOBACCO COMPANY,

15             Defendants.
                                                    /
16

17            On January 12, 2005, this Court heard oral argument on motions to dismiss brought by defendant Bill

18    Lockyer ("Lockyer") and defendants Philip Morris USA, Inc., R.J. Reynolds Tobacco Company, Brown &

19    Williamson Tobacco Corporation, and Lorillard Tobacco Company (collectively "manufacturer defendants").

20    Having carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS

21    defendants' motions for the reasons set forth below.

22

23                                              **BACKGROUND**

24            This case arises out of the Master Settlement Agreement ("MSA") entered into on November 23,

25    1998, between the four leading domestic cigarette manufacturers and the attorneys general of forty-six states,

26    including California.[1]  The MSA and related legislation have been subject to multiple legal challenges, and two

27    _____

28            [1] The District of Columbia and five U.S. territories are also parties to the MSA.  See Compl. Ex. A,
      Master Settlement Agreement § II(rr).

United States District Court
For the Northern District of California

different district courts in this circuit have rejected such challenges.  See PTI, Inc. v. Philip Morris, Inc., 100 F. Supp. 2d 1179 (C.D. Cal. 2000); Forces Action Project LLC v. California, 2000 WL 20977 (N.D. Cal. 2000).[2]

Under the MSA, the states agreed to dismiss pending suits and to refrain from filing suit against the four cigarette manufacturers, and the manufacturers agreed to pay billions of dollars to the states over a number of years, to be used to pay health costs from smoking-related illnesses and to fund smoking prevention programs. These four manufacturers also agreed to numerous restrictions regarding sales, marketing, advertising, lobbying, research, education, and disclosure practices.  MSA § III.  Courts in the settling states issued consent decrees and final judgments approving the MSA.

The four manufacturer defendants in this case, Philip Morris USA Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company, are referred to in the MSA as the "Original Participating Manufacturers," or OPMs.  Under the MSA, the OPMs are required to make annual payments to the settling states based on their relative market shares.  Other cigarette manufacturers existing at the time of the MSA were given ninety days to elect to participate in the MSA.  Those who did are called "Subsequent Participating Manufacturers," or SPMs.  An SPM is subject to the same marketing restrictions as the OPMs but guaranteed a permanent exemption from the annual payment requirement as long as its market share remains below 1998 levels or 125% of 1997 levels, whichever is greater.  MSA § IX(i).  Plaintiff alleges that the OPMs and SPMs account for at least 96% of all U.S. cigarette sales.  Compl. ¶ 18.  Manufacturers electing not to participate in the MSA are called "Non-Participating Manufacturers," or NPMs.  NPMs are not subject to any marketing restrictions.

Plaintiff Steve Sanders represents a class of California consumers who purchased cigarettes

---

[2] Other unsuccessful legal challenges to the MSA include Premium Tobacco v. Fisher, 51 F. Supp. 2d 1099 (D. Colo. 1999); Hise v. Philip Morris, Inc., 46 F. Supp. 2d 1201 (N.D. Okla. 1999), aff'd mem., 2000 WL 192892 (10th Cir. Feb. 17, 2000); A.D. Bedell Wholesale Co. v. Philip Morris, Inc., 104 F. Supp. 2d 501 (W.D. Pa. 2000), aff'd, 263 F.3d 239 (3d Cir. 2001), cert. denied, 534 U.S. 1081 (2002).  In Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205 (2d Cir. 2004), reh'g denied, 363 F.3d 149 (Mar. 25, 2004), the Second Circuit reversed the district court's dismissal of an action brought against New York state officials challenging MSA-related legislation, finding that state action immunity doctrine did not immunize the legislation from preemption by the Sherman Act.  On remand, the district court denied plaintiffs' motion for a preliminary injunction with regard to the MSA, New York's "escrow statute," and the Contraband statute.  See Freedom Holdings, Inc. v. Spitzer, 2004 U.S. Dist. LEXIS 18296 at *101 (Sept. 14, 2004).

United States District Court

For the Northern District of California

1    manufactured by one or more of the manufacturer defendants from June 9, 2000, to the present.  Compl. ¶ 6.

2    Plaintiff challenges the MSA as an "anticompetitive hybrid agreement" that permits the OPMs and SPMs to

3    prevent price competition and raise cigarette prices.  Compl. ¶ 3, 20.  Plaintiff also alleges that the manufacturer

4    defendants have "further protect[ed] their market dominance" by "obtain[ing] the passage of two California

5    statutes" and have dramatically increased the price of cigarettes since the enactment of the MSA.   Id.

6    According to plaintiff, the MSA creates a cartel accomplished through several of its provisions: (1) the Relative

7    Market Share Adjustment; (2) the Renegade Clause; (3) the NPM Downward Adjustment; (4) the Qualifying

8    Acts; (5) the Contraband Amendments; and (6) the Severability Clause.

9         The Relative Market Share Adjustment provides that each individual manufacturer defendant's share

10   of the annual payment obligation is based on its relative market share.[3]  Plaintiff alleges that the Relative Market

11   Share Adjustment restricts output and eliminates price competition because if one OPM raises prices, the

12   others will be "induced and/or coerced" into following the price increase, since any increase in market share

13   will be offset, exceeded, or substantially reduced by increased payment obligations.  Compl. ¶ 21.

14        The Renegade Clause permanently exempts an SPM from making annual payments as long as its

15   market share remains below 1998 or 125% of 1997 levels.  For each increase in market share, an SPM is

16   penalized by having to pay a pro rata share of the annual payment.  Thus, plaintiff alleges that the Renegade

17   Clause effectively prevents SPMs from price competing with the manufacturer defendants by penalizing SPMs

18   that increase their market share and offsetting the profits an SPM can get from additional sales.  Compl. ¶ 22.

19

20        The NPM Downward Adjustment compensates manufacturer defendants for any loss in market share

21   due to "disadvantages" associated with participating in the MSA, including price competition with a NPM.  In

22   some circumstances, the manufacturer defendants' payment obligation may be decreased up to three times the

23   amount of revenue lost, which coerces states to protect the manufacturer defendants' market share so as not

24   to suffer this reduction in revenue.  Compl. ¶ 23.   According to plaintiff, the states have enacted laws that

25   protect the MSA's anti-competitive provisions, specifically the Qualifying Acts and Contraband Amendments,

26

---

27        [3] The MSA defines "market share" as a manufacturer's "respective share (expressed as a percentage)
of the total number of individual Cigarettes sold in the fifty United States, the District of Columbia and Puerto
28   Rico during the applicable calendar year."  MSA § II(z).

3

and these statutes are preempted by federal antitrust laws.[4]

The Qualifying Act aims to "effectively and fully neutralize[] the cost disadvantages that the Participating Manufacturers experience vis-a-vis Non-Participating Manufacturers."  MSA § IX(d)(2)(E).[5]  The Qualifying Act creates a barrier to entry for cigarette manufacturers who did not begin selling cigarettes until after 1998.  These manufacturers "have no practical choice" but to become NPMs, since without 1997 or 1998 market share they cannot benefit from the permanent payment exception of SPMs.  Compl. ¶ 27(a)(1).  As NPMs, these manufacturers pay a percentage of each unit sale into escrow, forcing them to set prices higher than SPMs.  The escrow payments discourage price competition with the OPMs and SPMs.  The Contraband Amendment, a subsequent amendment to the Qualifying Act, permits the Attorney General to prevent a tobacco manufacturer from selling cigarettes in California if the manufacturer is not complying with the Qualifying Act.

Plaintiff alleges that the manufacturer defendants have used the MSA, the Qualifying Act, and the Contraband Amendment to protect their market shares while they price gouge California consumers.  Specifically, plaintiff contends that the OPMs raised the price of a carton of cigarettes by $4.50 on the day the MSA was enacted, and by $7.70 per carton in the three and a half years since then, earning an additional $20 billion per year in revenue.  Compl. ¶ 29.  Plaintiff alleges that the OPMs' market shares "have not appreciably changed" despite these price increases.  Id. at ¶30.  In addition, the State of California does not supervise the OPMs' pricing decisions.  Id. at ¶ 29.

Plaintiff seeks declaratory relief under 28 U.S.C. § 2201 against defendant Lockyer; injunctive relief under 42 U.S.C. § 1983 against defendant Lockyer; and injunctive relief under the Sherman Antitrust Act, 15 U.S.C. § 1, against all defendants, on grounds that the statutes implementing the MSA are preempted by federal antitrust laws.  Plaintiff also seeks damages from the manufacturer defendants for violations of Cal. Bus.

---

[4] Defendant Lockyer refers to the "Qualifying Act" as the "reserve fund statute."  Under the MSA, a Qualifying Act is one that is substantively identical to the Model Statute set forth in the agreement.  MSA Ex. T.  He refers to the "Contraband Amendment" as "California's 'complementary legislation.'" Def. Lockyer's Mot. at 8:18-19.  The Court uses the language of the complaint and thus refers to these statutes as the Qualifying Act and Contraband Amendment.

[5] California's Qualifying Act is Cal. Health & Safety Code § 104557.  The Contraband Amendment is Cal. Bus. & Prof. Code § 22979.

United States District Court
For the Northern District of California

& Prof. Code §§ 16720, Cal. Bus. & Prof. Code §§ 17200, common law unfair competition, and restitution.

Now before the Court are motions to dismiss the complaint by defendant Lockyer and the manufacturer defendants.[6]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. See Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. See United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F. 3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Lockyer's Motion to Dismiss**

The first three claims against defendant Lockyer challenge the validity and enforceability of California's Qualifying Act and Contraband Amendment, as per se violations of federal antitrust law subject to preemption by the Sherman Antitrust Act, 15 U.S.C. §1 et seq. Lockyer moves to dismiss plaintiff's first, second, and

---

[6] Plaintiff and defendant Lockyer have filed Requests for Judicial Notice ("RJN"). Defendants object to plaintiff's RJN on grounds of relevance. The Court finds that the materials submitted by plaintiff are relevant, and hereby GRANTS both parties' requests.

United States District Court
For the Northern District of California

third causes of action against him on grounds that (1) the state-action immunity doctrine protects California's legislation implementing the MSA; and (2) even if this immunity does not apply, California's Qualifying Act and Contraband Amendment are not preempted by federal antitrust law.  In addition, Lockyer contends that, to the extent that plaintiff is challenging the MSA itself, the <u>Noerr-Pennington</u> doctrine bars plaintiff's claims.

## A.    State action immunity

The state action doctrine, first enunciated by the Supreme Court in <u>Parker v. Brown</u>, 317 U.S. 341, 350-52, 63 S. Ct. 307 (1942), provides that when a state exercises its authority and enacts a regulation with anti-competitive effects, the state and private parties acting at its direction are not liable for antitrust violations. <u>See</u> <u>PTI v. Philip Morris, Inc.</u>, 100 F. Supp. 2d at 1196. The doctrine is based on principles of federalism and state sovereignty, and the <u>Parker</u> court reasoned that Congress did not intend the Sherman Act to restrain the conduct of state officials acting at the direction of the legislature.  <u>Parker</u>, 317 U.S. at 350-51.  The doctrine does not apply when the state acts as a "participant in a private agreement or combination by others for restraint of trade."  <u>Id.</u> at 351-52.  In addition, "a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful."  <u>Id.</u> at 351.  The <u>Parker</u> doctrine has been extended from pure legislative activity to action by the judicial and executive branches, as well as to the regulatory acts of municipalities that are authorized by state law.  <u>See</u> <u>Hoover v. Ronwin</u>, 466 U.S. 558, 573, 104 S. Ct. 1989 (1984) (state supreme court was immune from antitrust liability for regulating state bar admissions); <u>Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.</u>, 810 F.2d 869, 876 (9th Cir. 1987) (state executives and agencies may be entitled to immunity for actions pursuant to their constitutional or statutory authority); <u>City of Columbia v. Omni Outdoor Adver.</u>, 499 U.S. 365, 370-74, 111 S. Ct. 1344 (1991) (municipality immune under <u>Parker</u> when authorized by state law to set billboard restrictions).

Since <u>Parker</u>, the Supreme Court has clarified the state action doctrine.  In <u>Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.</u>, 445 U.S. 97, 100 S. Ct. 937 (1980), it articulated "two standards for antitrust immunity": (1) the challenged restraint must be "clearly articulated and affirmative expressed as state policy"; and (2) the state must "actively supervise" the policy.  <u>Midcal</u>, 445 U.S. at 105 (citations omitted).  Then, in

United States District Court
For the Northern District of California

Hoover v. Ronwin, supra, the Supreme Court further held that "when a state legislature adopts legislation, its actions constitute those of the State, and *ipso facto* are exempt from the operation of the antitrust laws." Hoover, 466 U.S. at 567-68. Reviewing its state action jurisprudence, the court observed:

> In cases involving the anticompetitive conduct of a nonsovereign state representative the Court has required a showing that the conduct is pursuant to a "clearly articulated and affirmatively expressed state policy" to replace competition with regulation. The Court has also found the degree to which the state legislature or supreme court supervises its representative to be relevant to the inquiry. When the conduct is that of the sovereign itself, on the other hand, the danger of unauthorized restraint of trade does not arise. Where the conduct at issue is in fact that of the state legislature or supreme court, we need not address the issues of "clear articulation" and "active supervision."

Hoover, 466 U.S. at 569 (citations omitted).

Thus, after Midcal and Hoover, the threshold inquiry is whether the challenged action is a sovereign act by the state or the conduct of private persons.

Here, Lockyer contends that California's Qualifying Act and Contraband Amendment are sovereign acts by the state of California, enacted by the legislature and enforced by politically accountable state officials. Plaintiff argues that the MSA and these legislative enactments together require Midcal analysis because the statutes are not exempt from antitrust scrutiny simply because they are sovereign acts of the state.[7] Applying Midcal, plaintiff contends that the MSA fails to meet the requirement that the state "actively supervise" the anticompetitive activity.

The Court finds that the settlement itself is a sovereign act of the state of California, and the Qualifying Act and the Contraband Amendment are direct legislative activity. As the PTI court recognized, the MSA is the product of litigation by the states' attorneys general and then negotiation with the major tobacco companies. It was approved in California by a judgment and consent decree in the California Superior Court. See Def. Lockyer's Mot. Ex. B. The California legislature enacted the Qualifying Act in 1999 and the Contraband Amendment in 2003. Parker makes clear that legislative enactments are direct state action, and under Hoover, the Midcal analysis is neither appropriate nor required for direct acts of the sovereign. In addition, the Ninth Circuit has expressly held that executive branch officials are entitled to Parker immunity "for actions taken pursuant to their constitutional or statutory authority, regardless of whether these particular actions or their

---

[7] Plaintiff also argues that Midcal analysis is appropriate because the MSA is a "hybrid restraint." The Court considers this argument in Part II, below.

United States District Court

For the Northern District of California

1  anticompetitive effects were contemplated by the legislature." Charley's Taxi, 810 F.2d at 876; see also Deak-

2  Perera Hawaii, Inc. v. Dep't of Transp., 745 F.2d 1281, 1282-83 (9th Cir. 1984).

3       In Charley's Taxi, the challenged action was an exclusive contract to provide airport taxi services, with

4  a maximum rate set by city ordinance. The Ninth Circuit found that "[w]hen the state executive or executive

5  agencies act within their lawful authority, their acts are those of the sovereign," and did not address the active

6  supervision requirement of Midcal. Plaintiff argues that Charley's Taxi is distinguishable because the

7  government set the rates and prices, and that it no longer remains good law.

8       The Court is persuaded that Charley's Taxi remains good law and that the application of its rule by the

9  district courts in this circuit was correct. See PTI v. Philip Morris, Inc., 100 F. Supp. 2d 1179; Forces Action

10  Project LLC v. State of California, No. 99-0607 MJJ, Order Denying Leave to Amend at 8-9 & n.12

11  (Manufacturer Defs.' Mot. Ex. A). The Forces Action court concluded that the Supreme Court's decision in

12  F.T.C. v. Ticor Title Ins. Co., 504 U.S. 621 (1992) did not overrule Charley's Taxi, and that therefore even

13  if the immunity recognized by the Ninth Circuit was broader than in other circuits, it was bound by the Ninth

14  Circuit's decision. See Forces Action Project, Order Denying Leave to Amend at n.12. This Court concurs

15  in that assessment. Accordingly, defendant Lockyer is immunized under the state action doctrine from antitrust

16  liability for the MSA itself and for enforcement of the Qualifying Act and Contraband Amendments.

17       The Second Circuit's contrary holding does not persuade the Court otherwise.[8] In Freedom Holdings,

18  Inc. v. Spitzer, 357 F.3d 205, 233, reh'g denied, 363 F.3d 149 (2d Cir. 2004), that Court of Appeals applied

19  Midcal analysis and held that the alleged anti-competitive scheme was not actively supervised by the state of

20

21

22       [8] In addition, the Court declines to follow the Third Circuit's pronouncements on this issue, which are
   equivocal at best. In A.D. Bedell Wholesale Co. v. Philip Morris, 263 F.3d 239 (3d Cir. 2001), cert. denied,
23  534 U.S. 1081 (2002), the Third Circuit affirmed the dismissal of claims brought against cigarette
   manufacturers on the basis of the Noerr-Pennington doctrine. The Bedell court also applied Midcal analysis
24  and concluded that the manufacturers were not entitled to Parker immunity. 263 F.3d at 254. Although the
   Bedell court did not reach the question of "whether the acts of executive officials constitute state action that
25  avoids Midcal analysis," 263 F.3d at 256, the Third Circuit later addressed this issue in Mariana v. Fisher, 338
   F.3d 189 (3d Cir. 2003), cert. denied, 540 U.S. 1179 (2004). It considered itself "bound by Bedell to abstain
26  from reaching a different conclusion on Parker immunity," and by Bedell's statement that "because private
   participants in state action enjoy Parker immunity only to the extent the States enjoy immunity, the defendants
27  are not shielded by Parker." It observed: "[p]erhaps unintentionally, because the issue was not before it, by
   this sentence Bedell seems to have assumed, if not decided, that the States have no Parker immunity," and
28  noted that "[c]ritics may with some justification regard our discussion of Parker immunity as dictum, and well
   it may be." 338 F.3d at 203-04.

New York.  The <u>Freedom Holdings</u> court considered <u>Hoover</u> inapplicable because the anticompetitive conduct in <u>Hoover</u> was performed entirely by state actors, but this Court finds that the principle enunciated in <u>Hoover</u> and <u>Parker</u> reaches beyond <u>Hoover</u>'s facts.  In light of this Supreme Court authority and the apparent scope of state action immunity in the Ninth Circuit, the Court finds that defendant Lockyer is immune from antitrust liability under <u>Parker</u>.

Accordingly, the Court hereby GRANTS Lockyer's motion to dismiss on this ground.

**B.     Preemption analysis**

Lockyer also argues that <u>Midcal</u> analysis is inappropriate because California's legislation is not, as plaintiff alleges in his first three causes of action, preempted by the Sherman Act.  Preemption may exist if the challenged scheme constitutes a <u>per se</u> violation of the Sherman Act.  A challenged state statute is a <u>per se</u> violation if, on its face, it "mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute." <u>Rice v. Norman Williams Co.</u>, 458 U.S. 654, 661, 102 S. Ct. 3294 (1982).  As with any inquiry regarding whether a state law is preempted by a federal statute under the Supremacy Clause, the fundamental question is "whether there exists an irreconcilable conflict between the federal and state regulatory schemes." <u>Id.</u> at 659.  The existence of a "hypothetical or potential conflict is insufficient to warrant the preemption of the state statute." <u>Id.</u>

Lockyer contends that there is no conflict here because the challenged statutes do not permit tobacco manufacturers to fix prices, limit output, divide markets, or engage in violations of the antitrust laws.  The Court agrees.  The key allegation of plaintiff's Sherman Act claim is that the MSA creates an incentive for the manufacturer defendants to raise prices in parallel fashion, since a price increase by one OPM alone would increase market share for the others as well as for the SPMs, resulting in their having to make higher payments under the settlement.  This scenario presents a "hypothetical" or "potential" conflict with the Sherman Act, but not the "irreconcilable" conflict required for preemption.  The California statutes do not mandate, permit, or place irresistible pressure on manufacturers to take concerted action; rather they require unilateral action by each to make settlement or escrow payments.  The statutes themselves also constitute action on the part of the

9

California legislature, not concerted action by private parties in restraint of trade, as the Sherman Act requires. See 15 U.S.C. § 1.  In addition, as Lockyer contends, the alleged barrier to entry for NPMs created by the Qualifying Act is not apparent from the face of the statute.  Taking all of plaintiff's allegations as true, the Court cannot conclude that the MSA authorizes collusive or concerted action on the part of the manufacturers to raise prices to monopolistic levels.

Consequently, the Court finds that the MSA does not constitute a per se violation of the Sherman Act.

## C.   Noerr-Pennington immunity

According to Lockyer, Sanders' complaint appears only to challenge California's legislation implementing the MSA, not the MSA itself.  But in the event that plaintiff seeks relief from Lockyer based on the MSA, defendant argues that this claim is barred by Noerr-Pennington immunity.

The Noerr-Pennington doctrine protects from antitrust liability those who petition the government in order to secure or amend their rights.  See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U. S. 127, 81 S. Ct. 523 (1961); United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S. Ct. 1585 (1965).  The doctrine encompasses the right to petition all branches of government, including the judiciary, see Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972), but does not include sham or baseless petitioning.  Omni, 499 U.S. at 379-80; Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 60-61, 113 S. Ct. 1920 (1993). Under Noerr-Pennington, private entities are immune from liability for "mere attempts to influence the passage or enforcement of laws."  Noerr, 365 U.S. at 135. The immunity exists regardless of the potentially anti-competitive motivations of the private actors.  Pennington, 381 U.S. at 670.  The doctrine applies to government officials' petitioning activity in addition to that of private parties.  Manistee Town Center v. City of Glendale, 227 F.3d 1090, 1093 (9th Cir. 2000).

The issue for Lockyer is whether Noerr-Pennington applies only to the acts of petitioning themselves or whether it extends to the resulting government action, including a litigation settlement like the MSA.  Noerr-Pennington immunizes certain conduct "incidental to the prosecution of the suit," which includes the decision to settle a claim.  See Theofel v. Farey-Jones, 359 F.3d 1066, 1078 (9th Cir. 2003); Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc., 944 F.2d 1525, 1528 (9th Cir. 1991), aff'd, 508 U.S. 49,

United States District Court

For the Northern District of California

113 S. Ct. 1920 (1993).  Moreover, other courts have found that "incidental" conduct includes litigation settlements and the MSA in particular.  See Bedell, 263 F.3d at 252 (reasoning that Noerr-Pennington immunity applies to settlement agreements between private parties and sovereign states "as it does to other more traditional petitioning activities"); PTI, 100 F. Supp. 2d at 1193 (finding immunity for the MSA itself and for "the various Qualifying States, versions of the Model Act, trademark litigation, and anticompetitive conduct of the private defendants"); Hise, 46 F. Supp. 2d at 1206 (finding that private defendants' conduct in negotiating and entering into the MSA was incidental to litigation), aff'd mem., 2000 WL 192892 (10th Cir. Feb. 17, 2000); Forces Action Project LLC v. California, 2000 WL 20977, at *8 (N.D. Cal. Jan. 5, 2000) (finding Noerr-Pennington immunity for the actions of government and tobacco company defendants in entering into the MSA).  This Court agrees that Noerr-Pennington immunity applies to the MSA as the direct result of protected petitioning activity.

Accordingly, the Court hereby GRANTS defendant Lockyer's motion to dismiss.

///

## II.     Manufacturer Defendants' Motion to Dismiss

The manufacturer defendants move to dismiss plaintiff's third, fourth, fifth, sixth, and seventh causes of action against them, arguing that all claims are barred by both the Noerr-Pennington and Parker immunity doctrines.

### A.     Noerr-Pennington immunity

The manufacturers argue that all of the conduct alleged in Sanders' complaint is immunized under the Noerr-Pennington doctrine.  As discussed above, Noerr immunity protects efforts by private actors to influence public officials, regardless of their anticompetitive motivations.  Omni, 499 U.S. at 380; Pennington, 381 U.S. at 670.  Plaintiff contends that while Noerr-Pennington applies to the manufacturers' activities in negotiating and achieving the MSA, there is no immunity for "the subsequent operation of an anticompetitive restraint."  Pl.'s Opp'n at 10:26-27.  He argues that Noerr-Pennington protects only petitioning conduct of the manufacturer defendants, and that the MSA and related legislation are merely "fruits" of the petitioning activity not covered

1  by the doctrine.

2  Every district court to consider the application of Noerr-Pennington to the MSA and related statutes

3  has concluded that the conduct of the tobacco manufacturers in negotiating and entering into the settlement is

4  immunized under the doctrine. See PTI, 100 F. Supp. 2d at 1193 ("the private defendants are clearly immune

5  for their activities involved with the negotiation, execution, and attempts to implement the MSA, the Qualifying

6  Statute, and the Model Act"); Forces Action Project, 2000 WL 20977 at *8 ("defendants action in negotiating

7  and entering into the MSA are immunized from suit"); Hise, 46 F. Supp. 2d at 1206 ("defendants' activities,

8  in negotiating the MSA with the several settling states and achieving a settlement agreement with those states,

9  are protected under the Noerr-Pennington doctrine"); Bedell, 263 F.3d at 250-54 (affirming district court on

10  this ground).[9]  In addition, Ninth Circuit law has not changed since PTI and Forces Action were decided.

11  The Court cannot conclude that Noerr-Pennington immunity is limited in the manner plaintiff suggests.

12  While the Ninth Circuit has not yet ruled on whether the doctrine can immunize anticompetitive restraints

13  resulting from petitioning activity, several courts have expressly held that parties are immune from liability for

14  antitrust injuries caused by the petitioned-for government action. See, e.g., Bedell, 263 F.3d at 252; PTI, 100

15  F. Supp. 2d at 1193 (finding immunity for "[a]ll claims premised on the illegality of the MSA § under the

16  antitrust laws"); Forces Action Project, Order Denying Leave to Amend at 9 ("[i]t is well-settled that the

17  Noerr-Pennington doctrine applies to immunize entities where, as here, no First Amendment rights are

18  implicated and the alleged conduct would be deemed illegal per se under the antitrust laws").  This principle

19  was also recognized by the Supreme Court in Pennington.  See 381 U.S. at 669.  Moreover, plaintiff's

20  argument that immunizing the fruits of petitioning activity would make all legislation immune is unavailing.  To

21  the contrary, the immunity would mean nothing if a petitioner "were then subjected to antitrust liability for his

22  success."  Greenwood Utilities Comm'n v. Mississippi Power Co., 751 F.2d 1484, 1505 (5th Cir. 1985); see

23  also Campbell v. City of Chicago, 823 F.2d 1182 (7th Cir. 1987).  Plaintiff does not allege, and the Court

24  does not find, that the settlement itself is a "sham," and thus the MSA is covered by Noerr-Pennington.  The

25  distinction plaintiff seeks to draw – between defendants' conduct in negotiating and achieving the settlement

---

27  [9] While Freedom Holdings holds that Noerr-Pennington does not apply, it involved only a suit against

28  New York state officials, not tobacco manufacturers, and a challenge to the MSA enabling statutes, not the MSA itself.  Thus, it is not relevant to the manufacturers' motion.

and their subsequent compliance with its regime – is one without a difference in this case.

The Court finds that <u>Noerr-Pennington</u> doctrine applies to the MSA and related California statutes. Accordingly, the manufacturer defendants are immune from suit for their operation under the settlement agreement and implementing legislation.

The manufacturer defendants' motion to dismiss is GRANTED on this ground.

### B. State action immunity

The manufacturer defendants also argue that this doctrine protects them from suit because the MSA and implementing legislation are state action. As discussed above, the Court agrees that the MSA and enabling legislation are state action, approved by state courts, enacted by the legislature, and enforced by state officials. Plaintiff argues that the MSA and these legislative enactments require <u>Midcal</u> analysis and that the MSA fails to meet the second <u>Midcal</u> requirement that the state "actively supervise" anticompetitive activity. Sanders also contends that the MSA is a "hybrid restraint" rather than direct state action.

Where there is direct state action affording immunity, the immunity extends equally to private parties and state actors. <u>See</u> <u>PTI</u>, 100 F. Supp. 2d at 1196. The Court finds that the settlement itself, the Qualifying Act, and the Contraband Amendment are state action. Accordingly, both the manufacturer defendants and defendant Lockyer are immunized under the state action doctrine from antitrust liability for the MSA itself, the state's enactment of the Qualifying Act and Contraband Amendments, and their operation under the MSA regime.

Moreover, the MSA and related statutes are not hybrid restraints. A hybrid restraint is a government action delegating regulatory power to private parties so that they can enforce their own private market decisions. <u>Rice v. Norman Williams Co.</u>, 458 U.S. 654, 665 (1982) (Stevens, J., concurring); <u>Fisher v. City of Berkeley</u>, 475 U.S. 260, 268 (1986); <u>324 Liquor Corp. v. Duffy</u>, 479 U.S. 335 (1987). The MSA does not authorize collusive action among the manufacturers or give them the regulatory authority to set prices in the cigarette market. It simply imposes unilateral payment obligations on OPMs and SPMs and escrow contributions for NPMs. Without an agreement by the manufacturers to raise prices, which Sanders does not allege, these defendants would not be subject to antitrust liability even if the MSA were a hybrid restraint.

United States District Court
For the Northern District of California

1    Miller v. Hedlund, 813 F.2d 1344, 1351 n. 4 (9th Cir. 1986) (private parties operating independently under

2    a hybrid restraint are not liable under the Sherman Act).

3        The Third Circuit's discussion of Parker immunity for the manufacturers in A.D. Bedell Wholesale Co.

4    v. Philip Morris, 263 F.3d 239, does not compel a contrary conclusion.  In Bedell, the Court of Appeals

5    affirmed the dismissal of claims brought against cigarette manufacturers on the basis of the Noerr-Pennington

6    doctrine.  Though it acknowledged that "[its] analysis could end [t]here," the Bedell court then applied Midcal

7    analysis and concluded that the manufacturers were not entitled to Parker immunity because the

8    "anticompetitive injury here resulted from the tobacco companies' conduct after implementation of the [MSA]

9    and not from any further positive action by the states."  263 F.3d at 258.  The Third Circuit also considered

10   the MSA a hybrid restraint.  Id.  Because this Court concludes that the MSA is not a hybrid restraint, and

11   because the Ninth Circuit's state action jurisprudence counsels a different finding, the Bedell court's apparent

12   dicta on this subject is not persuasive.

13       Accordingly, the manufacturer defendants are entitled to state action immunity.  Their motion to dismiss

14   is GRANTED on this ground.

15

16       **C.    Immunity for state law claims**

17       The manufacturer defendants also contend that state action immunity protects them from liability from

18   plaintiff's state law claims as well.  Midcal does not apply to the scope of state action immunity under state law.

19   Instead of considering whether Congress intended to restrict state action under the Sherman Act, the Court

20   must consider whether the state of California intended to restrict its own action by enacting the MSA-related

21   statutes.  See People v. City & County of San Francisco, 92 Cal. App. 3d 913, 917; Blank v. Kirwan, 39 Cal.

22   3d 311, 323 (1985).  Plaintiff does not address this argument in his opposition.  The Court finds that the

23   legislative acts of the state of California cannot violate the state's own antitrust law, and thus defendants are

24   immune from liability for plaintiff's Cartwright Act, Unfair Competition Law, and common law unfair

25   competition claims.

26       Consequently, the Court GRANTS defendants' motion to dismiss plaintiff's state law claims.

27

28

14

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motions to dismiss by defendant Lockyer and the manufacturing defendants.  Plaintiff's complaint is dismissed with prejudice.  [Docket #s 24, 25]


**IT IS SO ORDERED.**


Dated: March 28, 2005                                     S/Susan Illston
                                                      SUSAN ILLSTON
                                                      United States District Judge

United States District Court

For the Northern District of California

15